## RICHTER v. STATE.

ANIMALS—INSPECTION AND QUARANTINE OF SHEEP—POLICE REGULATIONS—STATUTES—AUTHORITY OF SHEEP INSPECTOR—REMOVING SHEEP BEYOND QUARANTINE LIMITS—PROSECUTION—QUESTION FOR JURY—INSTRUCTIONS—EVIDENCE.

1. The statute providing for the inspection of sheep and the quarantine of such animals as are infected with or have been exposed to an infectious or contagious disease is essentially a police regulation, and the power thereby conferred upon sheep inspectors is therefore not inhibited by the constitution.

2. The sheep inspector is the agent of the state for the enforcement by inspection and quarantine in authorized cases of the police regulations relating to sheep.

3. The power conferred upon sheep inspectors to inspect and quarantine sheep cannot be used arbitrarily or oppressively, but only in the cases and in the manner provided by statute, which, being penal in its nature, must be strictly construed.

4. The authority of the sheep inspector to declare and establish a quarantine for sheep rests upon the fact that they are either infected with or have been exposed to a contagious disease mentioned in or covered by the statute.

5. The mere fact that certain sheep are suspected of being infected with an infectious or contagious disease does not authorize an inspector to quarantine them, but only to inspect them, and the authority to quarantine then depends upon the result of such inspection, and exists only when such sheep are found to be infected, or to have been exposed to an infectious or contagious disease.

6. The acts of a lawful sheep inspector beyond and outside the authority reposed in him by statute are void. He acts summarily, and is authorized to quarantine sheep only when a cause provided therefor by statute exists.

7. In a prosecution under the statute for removing sheep beyond quarantine limits established by an inspector for such sheep the defendant is not precluded from showing that the necessity for the quarantine did not exist, nor is he required to go into that question until the state has made out a prima facie case.

8. In such a prosecution the inspector is not the sole judge as to whether the sheep had been exposed to disease when that was the alleged cause of the quarantine, but the question is one for the jury.

9. Instructions to the effect that the inspector is the sole judge as to whether the sheep alleged to have been removed beyond quarantine limits had been exposed so as to justify their quarantine, and that the inspector had power to quarantine sheep which were suspected of being infected with an infectious or contagious disease, held to be prejudicial and reversible error.

10. In order to convict a defendant upon the charge of removing sheep from quarantine limits established for them by an inspector, it is necessary for the prosecution to show by competent evidence that the sheep were either infected or had been exposed to an infectious or contagious disease mentioned or covered by the statute.

[Decided April 21, 1908.]                (95 Pac., 51.)

ERROR to District Court, Big Horn County, HON. CARROLL H. PARMELEE, Judge.

Paul Richter, having been found guilty of removing certain sheep belonging to him from quarantine limits established for them by a sheep inspector, prosecuted error. The material facts are stated in the opinion.

*Ridgely & West,* for plaintiff in error.

The statute must be strictly complied with to establish a legal quarantine. If there was no legal quarantine the verdict and judgment is contrary to law. To show a legal quarantine the evidence should be competent; hearsay evidence is improper. (15 Ency. L. 309, 310.) A mere suspicion of infection does not authorize a quarantine. Whether the sheep had been exposed to disease or not was properly a question for the jury, and the instruction that the inspector is the sole judge as to whether or not there had been an exposure was erroneous. It invaded the constitutional right of trial by jury, and substituted for the verdict of the jury the opinion of the inspector, who admitted that he acted upon information received from outside parties. The quarantine officer must act upon competent evidence. His acts are not conclusive. (U. S. v. Wittberger, 5 Wheat. 76; U. S. v. Harris, 177 U. S. 305; Hardwick v. Brookover, 30 Pac., 21; Asbell v. Edwards, 66 Pac. 641; *In re* Smith, 48 Am. St. 769; Pearson v. Zehr, 32 id. 113; People v. Board, 37 id 522.)

*W. E. Mullen,* Attorney General, for the State.

When the sheep inspector acts, either upon his own motion, pursuant to the rules promulgated by the board of sheep commissioners, or upon the written request of a sheep owner and tax payer as provided under the provisions of Sec. 2027, he may, under the provisions of Sec. 2027 and 2022, R. S., and in the exercise of a sound discretion, do any one of the following things. 1. Release the sheep if he finds them free from infection, contagion, or exposure of any kind. 2. Quarantine the sheep and order them treated

as soon as possible if found to be infected.   3.   If not infected, but found to have been exposed, quarantine them for a period until symptoms of disease develop or until released by order.   In the case at bar, the inspector acted well within the statute and rules, as shown by the evidence, in establishing a quarantine for this band of sheep, without ordering the owner thereof to dip or treat them.

The contention that a quarantine may be established only where the facts as to infection or exposure are shown according to the rules of evidence governing judicial proceedings is untenable.   No such rule has ever been held to apply to health officers in the discharge of their duties.   (State v. Rasmussen, (Idaho)  59  Pac.  936;  Kopalla v. State, (Wyo.)  89 Pac.  579.)    Whether a quarantine had been in fact established by the inspector, and whether or not it had been violated by the defendant were material questions for the jury to decide.   But whether the inspector exercised good or bad judgment in the establishment of the quarantine was not a question for the defendant to decide in the first instance, or for the jury on the trial.

Instruction No. 7 informed the jury that they were not the judges as to whether the sheep had been exposed, but that the inspector was the sole judge.   Unless our quarantine laws are to be placed in the hands of juries before action can be taken, this instruction was undoubtedly a correct statement of the law.   It is a well established principle that the acts of an administrative officer, clothed with discretionary powers and acting within the scope of his authority, cannot be questioned by the courts, unless negligence, fraud, or an abuse of power is alleged and proven.   (Mechem Pub. Off., Secs. 611, 613, 614; Hannon v. Agnew, 96 N. Y. 439; Appel v. State, 9 Wyo. 202.)

SCOTT, JUSTICE.

The plaintiff in error was convicted of a misdemeanor and brings error.

It appears from the record that Richter was and had been for many months prior to June 28, 1906, the owner of a

band of sheep which was kept and grazed upon the open range in Big Horn County. On said date a sheep inspector inspected the sheep and found that they were not infected with any disease, but acting on information to the effect that the sheep had been exposed to "scab" placed them in quarantine within certain limits fixed by him. The herder who was in charge of the sheep was duly notified and such notice was communicated to Richter who disregarded the notice and without permission of any inspector removed the sheep from the quarantine limits and herded them back upon the open range.

The court over the objection of the defendant gave to the jury instructions 1, 5, and 7, respectively as follows:

"1. You are instructed that under the law of this state whoever being the owner of sheep removes the same beyond the quarantine limits that may have been prescribed by any lawful inspector, is guilty of a misdemeanor."

"5. You are instructed that under the law of this state an inspector, either Federal or State, has authority to inspect and quarantine sheep affected with infectious or contagious diseases, or suspected of being so infected, or that have been exposed to any such disease."

"7. You are instructed that the jury are not the judges of the question as to whether or not the sheep in controversy had been exposed, but that the inspector is the sole judge of whether or not there has been an exposure."

It is urged that these instructions did not correctly present the law of the case to the jury and that the defendant was thereby prejudiced. The determination of this question involves a discussion of what powers are conferred upon a sheep inspector.

The Board of Sheep Commissioners consists of three members appointed by the Governor (Sec. 2074, R. S. 1899) who after qualifying choose their president from its members, and who are authorized to appoint a secretary. (Sec. 2076 id.) The board is authorized (Sec. 2077, R. S. 1899 as amended Chap. 98, S. L. 1905) to divide the state into

districts for inspection and appoint such inspectors as it may deem necessary in the manner as the board may provide by its rules and regulations; and to do and cause to be done all things practicable to protect the sheep of the state from disease, "and it shall prepare and promulgate such rules and regulations as it may deem necessary for the quarantining and dipping of sheep infected with scab, or any other infectious or contagious disease, or that have in any manner been exposed to any such disease and for the speedy and effective supervision among sheep as are not in conflict with the provisions of this chapter and also of Chapter 7 of the Revised Statutes of Wyoming 1899." Sec. 2087 as amended and re-enacted Chap. 98, S. L. 1905 is as follows: "Any inspector, either Federal or State, shall have authority to inspect and quarantine and treat sheep affected with contagious or infectious disease, or suspected of being so affected, or that have been so exposed to any such disease, and such sheep inspector may be called upon, in writing, at any time, by one or more sheep growers owning sheep and paying taxes in such county, to inspect any band of sheep in his county. Upon such request being received by such inspector, he shall forthwith proceed to inspect the sheep mentioned in such request. If he shall find them free from scab or other infectious or contagious disease, the expense of such inspection shall be paid by the party making such request. If he shall find upon such inspection that any of such sheep are infected with scab or any other infectious or contagious disease, or have been exposed in any manner to any such disease, the expense of inspection shall be paid by the owner of such sheep, and such inspector shall take the steps in relation to said sheep provided in the next succeeding section of this chapter." The next section, being Section 2088 of the R. S. as amended and re-enacted, provides in part that: "Whenever, upon examination by such inspector any flock of sheep kept or herded in the State of Wyoming shall be found infected with scab or any other infectious or contagious disease or that have

been exposed in any manner to any such disease, such inspector shall forthwith notify the owner or person in charge of such sheep in writing" and in such case may require that such sheep be kept within certain limits, to be by him fixed and specified, and that other sheep owners shall not enter upon such quarantined ground with their flocks of sheep until further notice or their sheep will also be quarantined. It is also provided that the owner or owners, person or persons in control of sheep so quarantined who shall fail to keep them within the quarantine limits until properly released shall be guilty of a misdemeanor.

It will be observed that the inspector's authority to quarantine sheep is expressly conferred by statute, and in the matter of quarantining sheep because infected with or because they have been exposed to infectious diseases he is the agent of the state. A conferred power of this nature is not inhibited by the constitution because it is the method and practically the only method by which the state can enforce its police regulations. The law is essentially of that nature and the protection sought and the object to be attained must be by a summary method and the state must act and act quickly through its agents who are clothed with certain powers in the performance of the duty. The power can not be used arbitrarily nor oppressively but only in such case and in the manner prescribed by the statute, which being penal in its nature must be strictly construed. We doubt if the legislature has the power to lodge in one man or set of men the authority to deprive a man of his right to the control and custody of his sheep because the inspector or any one else suspects that they are infected with scab. The inspector has not only the right but it is his duty to inspect the sheep, and if competent to do so it is an easy matter for him to determine whether they are infected or not. Section 2087, *supra*, as amended says in the first part that the inspector shall have authority to inspect and quarantine and treat sheep "affected with contagious or infectious diseases or *suspected of being so af-*

*fected* or that have been so exposed to any such disease."
We think the section should be considered as a whole and in
connection with the other provisions of the act. The latter
part of the section expressly provides that if he shall find
upon such inspection "that any of such sheep are infected
with scab or any other infectious or contagious disease, or
have been exposed in any manner to such disease  *  *  *
such inspector shall take the steps in relation to said sheep
provided in the next succeeding section of this chapter."
The next section being 2088 of the R. S., as amended, pro-
vides only for the quarantine of sheep found upon such
inspection to be infected with scab or any other infectious
disease, or that have been exposed in any manner to any
such disease.   Section 2100 as amended reads as follows:
"All misdemeanors under section two thousand and eighty-
eight, two thousand and ninety-three, two thousand and
ninety-four and two thousand and ninety-five shall be punish-
able by a fine of not less than twenty-five dollars nor more
than five hundred dollars, and all misdemeanors under sec-
tions two thousand and eighty-nine and two thousand and
ninety-one shall be punishable by a fine of not less than five
hundred nor more than two thousand dollars, and all such
fines when collected shall be paid into the treasury of the
county."

Under Section 2088 there is no authority to quarantine
sheep except for the causes therein stated.  The causes for
which sheep may be placed in quarantine limits are ex-
pressly enumerated and the misdemeanor therein defined
consists in the removal of the sheep from such limits with-
out a permit from the inspector after they have been duly
quarantined.  As no penalty is provided by the act for
the removal of sheep from quarantine limits except when
quarantined for specific causes we think the failure to pro-
vide such penalty excludes the idea that it was the legislative
intent that the inspector had authority to establish a quaran-
tine for any other cause.

That a mere suspicion of infection was not intended to
authorize a quarantine, but merely an inspection to deter-

mine the fact of infection is further evident from the provision of Section 2087 that if upon such inspection the inspector "shall find them free from scab or other infectious or contagious diseases, the expense of such inspection shall be paid by the party" requesting the inspection.

We are of the opinion that Section 2087 was meant to define the duties of the inspector which are preliminary in their nature and that the two sections considered together in connection with sections 2077 and 2100 as amended do not contemplate the quarantining of sheep because suspected of being infected, but that the inspector has .the power to inspect when so suspected and the authority to quarantine depends upon the result of such inspection and exists only when the sheep are found to be infected or to have been exposed to such infectious or contagious diseases. Any other construction would place an arbitrary power in the hands of the inspector which the law does not permit and the exercise of which might in many instances result in oppression and injustice. The jurisdiction of the inspector to declare and establish a quarantine for sheep rests upon the fact that they are either infected or have been exposed to such diseases as are enumerated by the statute, and this power should not be confounded with his authority to inspect in order to determine whether the conditions exist upon which a legal quarantine may be established.

Instruction number five was therefore erroneous, for by it the jury were told that the inspector had power to quarantine sheep which were suspected of being infected with infectious or contagious diseases, when no such power is conferred by the statute.

We have no doubt that instruction number one either standing alone or unaided by other proper instructions is erroneous. When considered in connection with instruction number seven the error by a construction of the two is quite apparent. It is not always true that the owner of sheep who removes them beyond quarantine limits that

may have been prescribed by a lawful inspector is guilty of crime. The inspector may be a lawful inspector and yet if he acts beyond and outside of the authority reposed in him by statute his acts are void, for in such case he has no jurisdiction to act. He is clothed with quasi judicial power. He acts summarily and is authorized to act only when certain causes exist. He should inform himself of the existence of one or the other of these causes. It is true that the statute is silent as to the manner and method of obtaining the information. The inspector is neither empowered to take testimony nor to administer an oath. In People v. Board of Health, 140 N. Y., 1, 37 Am. St., 523, certiorari was brought to review the proceedings of the board of health declaring that certain dams across a river were a nuisance and ordering their removal. There was no provision for a hearing before the board on the part of any person who was charged with maintaining a nuisance upon his premises. The court say: "Boards of health, and other like boards, act summarily, and it has not been usual anywhere to require them to give a hearing to any person before they exercise their jurisdiction for the public welfare. The public health might suffer or be imperiled if their action could be delayed until a protracted hearing could be brought to a determination."

The action of the inspector in quarantining the sheep did not conclude the defendant from showing that the necessity therefor did not exist, nor was the defendant required to go into that question until the state had made out a *prima facie* case. The inspector was not the sole judge nor could he pass judgment in this proceeding upon the question as to whether or not there had been an exposure. The issue was as to whether the defendant had violated the quarantine and if there had been no exposure, it being conceded that the sheep were not infected, there was no quarantine to violate for the act of the inspector in attempting to establish such quarantine would be illegal and unauthorized. The statute does not in terms make the decision of the inspector

final upon this question. We are not obliged to hold that it does. If it did its application to this case would be an invasion of the constitutional rights of the defendant. Without due process of law neither his property, personal rights or liberty can be interfered with. (Sec. 6, Art. 1, of the Constitution; People v. Board of Health, *supra.*) In the last named case it is said: "Boards of health under the acts referred to cannot as to any existing state of facts, by their determination make that a nuisance which is not in fact a nuisance. They have no jurisdiction to make any order or ordinance abating an alleged nuisance unless there be in fact a nuisance. It is the actual existence of a nuisance which gives them jurisdiction to act. Their acts declaring nuisances may be presumptively valid until questioned or assailed, for the same reasons which give presumptive legality to the acts of official persons under the maxim *omnia praesumuntur legitime facta donee probetur contrarium."*

In the case before us the act of the inspector may have been presumptively valid until the plea of not guilty was interposed. Such plea questioned the validity of the quarantine and thenceforth such presumption ceased to exist. The burden of proof was not shifted to the defendant, but as in all criminal cases rested upon the state to prove every essential element constituting the crime charged. One of the elements was that a valid quarantine had been established—that is to say, a quarantine which is authorized by the statute.

In Troy v. State, 10 Tex. App. 319, an act provided for the appointment of inspectors of sheep in certain counties and defined their duties. One of the sections provided that whenever an inspection of a flock or herd of sheep under the provisions of the act disclosed the presence of "scab" or other infectious or contagious disease it should become the duty of the inspector to notify at once the owner or person in charge, and prescribe certain limits within which the flock should be herded until cured. Another section

provided that any owner or person in charge who shall wilfully or knowingly fail to comply with or violate any of the provisions of the act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined, etc.

The similarity of the above provisions with those of our statute is apparent. Troy was convicted of a violation of the provisions of the statute in failing to keep his sheep within the limits prescribed by the inspector. He assigned as error the refusal of the court to instruct the jury as follows: "If the jury believe from the evidence that the sheep of the said C. W. Troy did not have the scab they will find him not guilty. If the jury believe from the evidence that the defendant did not wilfully violate the law in keeping the sheep within the limits prescribed by the inspector, you will find him not guilty." The court say: "If * * * the sheep of the defendant were infected with the disease called scab, and he had been properly notified of that fact, and limits had been prescribed within which the sheep should be kept until cured, and the defendant had wilfully and knowingly violated the provisions of the act as charged, then he would be guilty of a misdemeanor, but if not, then he would not be guilty. Hence, in our opinion, it was a material inquiry whether the defendant's flock of sheep had scab or not, and whether, this being the case, he had wilfully or knowingly failed of his duty in the premises; and the jury should have been so instructed in substance, as requested by the defendant's counsel." The judgment was reversed upon the ground of error in refusing to give the instruction so requested.

In the case before us the sheep were not quarantined on the ground that they were infected with scab or any other contagious disease but upon the ground that they had been exposed thereto, and as held in a former part of this opinion they could be inspected if suspected of being so infected or if they had been exposed. Whether or not they were infected with scab or had been exposed to such infection so as to authorize the inspector to place them within

quarantine limits is, we think, upon principle and authority a material inquiry for the jury in a prosecution of this kind and that the court by instruction number seven took this question from the jury and that in so doing it committed error prejudicial to the defendant.

There are other questions presented by the record as to the admissibility of hearsay evidence upon which the inspector acted. We do not deem it necessary to here discuss those questions in view of a new trial further than to say that this kind of testimony was evidently deemed competent upon the erroneous theory upon which the case was tried. To establish the fact that the sheep were either infected or exposed to the infection of diseases enumerated in the statute calls for competent evidence the same as it does to establish any other fact in the case. The existence of one or the other of these causes is necessary to the establishment of a valid quarantine, and in the absence of both the defendant would not be guilty of the charge contained in the information even though the inspector acted in good faith and upon evidence which seemed to him satisfactory. His judgment could not in this action be substituted for that of the jury.

For error in giving instructions 1, 5 and 7 to the jury the judgment will be reveresd, and the case remanded for a new trial.                                    *Reversed.*

POTTER, C. J., and BEARD, J., concur.